IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**JENNIFER A. LARSON**,

    Plaintiff,

v.

**CAROLYN W. COLVIN**,
Acting Commissioner of the Social Security Administration,

    Defendant.
_____

**Civ. No. 3:13-cv-01643-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Jennifer Larson brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income payments (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The issues before this Court are: (1) whether the Administrative Law Judge (ALJ) erred in evaluating the evidence submitted by plaintiff and examining psychologist, Dr. McKenna; (2) whether the ALJ erred in forming plaintiff's residual functional capacity (RFC); and (3) whether the ALJ erred in relying on the Medical-Vocational Guidelines ("the grids") at step five. Because the ALJ articulated sufficient reasons supported by substantial evidence in the record to reject plaintiff's testimony and Dr. McKenna's opinion, and because the ALJ's RFC and step five findings are supported by substantial evidence, the Commissioner's decision is AFFIRMED.

**PROCEDURAL AND FACTUAL BACKGROUND**

1 – OPINION AND ORDER

Plaintiff applied for SSI on March 15, 2010, alleging disability since July 28, 1994 (later amended to March 15, 2010). Tr. 24, 43, 135–141. This claim was denied initially and upon reconsideration. Tr. 24, 91–95, 99–101. Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ), and appeared before the Honorable Paul G. Robeck on April 3, 2012. Tr. 24, 36–62. ALJ Robeck denied plaintiff's claim by a written decision dated June 12, 2012. Tr. 24–31. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Tr. 1–4. Plaintiff now seeks judicial review.

Plaintiff, born on August 29, 1967, tr. 30, 42, 135, obtained her GED with little preparation in 1992 or 1993, tr. 228, 499, and worked most recently as a switchboard operator at the Metropolitan Clinic between 1994 and 1995, tr. 43, 150, 228. Plaintiff was forty-two at the time of alleged disability onset, and forty-four at the time of her hearing. *See* tr. 30, 42, 135.[1] Plaintiff alleges disability due to: depression, anxiety, attention deficit disorder (ADD), narcolepsy/cataplexy, idiopathic hypersomnia, panic attacks, and fatigue. *See* tr. 26, 168; Pl.'s Br. 2, 6, 8–10, 12–13, ECF No. 18.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

---

[1] Plaintiff was a "younger person" at the time of alleged disability onset and at the time of hearing. *See* 20 C.F.R. § 404.1563(c).

2 – OPINION AND ORDER

**DISCUSSION**

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's RFC, age, education, and work experience. *Id.*

Plaintiff contends that the ALJ's disability decision is not supported by substantial evidence and is based on an application of incorrect legal standards. In particular, plaintiff argues that: (1) the ALJ erred at step two by failing to recognize plaintiff's alleged narcolepsy/cataplexy and idiopathic hypersomnia as severe impairments; (2) the ALJ erred in evaluating plaintiff's testimony; (3) the ALJ erred in evaluating Dr. McKenna's opinion; (4) the ALJ's erred in forming plaintiff's RFC; and (5) the ALJ erred at step five by relying on the grids.

**I. Step Two**

At step two, the Commissioner must determine the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citations omitted); SSR 96-3P, 1996 WL 374181, at *1 (July 2, 1996). In other words, step two is a de minimis screening device used to dispose of groundless claims. *Webb*, 433 F.3d at 687 (citation omitted).

3 – OPINION AND ORDER

Plaintiff contends that the ALJ erred by finding that plaintiff's alleged narcolepsy/cataplexy syndrome[2] and idiopathic hypersomnia[3] were not severe impairments under step two. *See* Pl.'s Br. 9, ECF No. 18. In response, defendant argues that plaintiff did not demonstrate either medically determinable impairment, *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987), or, in the alternative, that any error committed was harmful. This Court looks to the record.

The ALJ, having reviewed the medical record, concluded that "there is no evidence that [plaintiff's] drowsiness affects her ability to function in a work setting." Tr. 26. Plaintiff does not contest this particular finding, but instead focuses on Dr. Ironside's "suspicio[n]" that she had "narcolepsy/cataplexy syndrome" in 2002, tr. 388, 390, 396, and her own reoccurring reports of fatigue, e.g., tr. 402, 428. However, a "suspicion" of narcolepsy is *not* a diagnosis of narcolepsy. To the extent that plaintiff reported fatigue on a reoccurring basis, that fatigue regularly improved with treatment, *see infra* § II, and was explicitly considered by the ALJ as a symptom of plaintiff's recognized depression, *see* tr. 28–30. Moreover, as discussed *infra* § II, the ALJ properly found plaintiff not credible.

Accordingly, even had this omission constituted a legal error, it could only have prejudiced plaintiff at step three or step five because the other steps, including this one, were resolved in her favor. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

---

[2] Narcolepsy with cataplexy is a disabling sleep disorder characterized by severe, irresistible daytime sleepiness and sudden loss of muscle tone (cataplexy), and can be associated with sleep-onset or sleep-offset paralysis and hallucinations, frequent movement and awakening during sleep, and weight gain. National Center for Biotechnology Information, *PubMed: Narcolepsy with cataplexy*, *available at* http://www.ncbi.nlm.nih.gov/pubmed/17292770.

[3] Idiopathic hypersomnia is a sleep disorder of central nervous system origin characterized by prolonged nocturnal sleep and period of daytime drowsiness. Affected individuals experience difficulty with awakening in the morning and may have associated sleep drunkenness, automatic behaviors, and memory disturbances. This condition differs from narcolepsy in that daytime sleep periods are longer, there is no association with cataplexy, and the multiple sleep latency onset test does not record sleep-onset rapid eye movement sleep. National Center for Biotechnology Information, *MedGen: Idiopathic hypersomnia*, *available at* http://www.ncbi.nlm.nih.gov/medgen/155626.

4 – OPINION AND ORDER

**II. Plaintiff's Credibility**

Plaintiff contends that the ALJ improperly rejected her testimony. Pl.'s Br. 17–19, ECF No. 18. In response, defendant argues that the ALJ's findings are supported by substantial evidence. Def.'s Br. 7–9, ECF No. 19.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529, 416.929. "In deciding whether to accept [this testimony], an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If a claimant meets the *Cotton* analysis[4] and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). This Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

The ALJ found that plaintiff was "not a credible witness." Tr. 30. In making this determination, the ALJ relied on two bases, including: (1) inconsistency between plaintiff's testimony and the medical evidence; and (2) inconsistency between plaintiff's testimony and her daily activities.

First, as to inconsistency with the medical evidence, the ALJ found:

---

[4] "The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–408 (9th Cir. 1986)).

5 – OPINION AND ORDER

> The claimant testified that she has trouble leaving the house because she blacks out and sweats and feels like she is going to pass out, and then must lie down for a few hours (Hearing Testimony 2:07:49 PM). However, there is no objective medical evidence in the record or any treatment notes that describe[] behavior such as this.

Tr. 30. Plaintiff characterizes this assessment of the record as "inaccurate" and directs this Court's attention to treatment notes in the record. Pl.'s Br. 18, ECF No. 18.

Plaintiff provides a single citation to substantiate her reoccurring "black out" or "pass out" symptoms. *Id.* On June 17, 1999, plaintiff met with Jennifer Norden, M.D. for a follow up appointment regarding plaintiff's anxiety/panic attack treatment. Tr. 338–39. Plaintiff reported that a panic attack the prior evening had caused her to faint. Tr. 338. Plaintiff also indicated that she had fainted once on a prior occasion in 1985. *Id.* Plaintiff does not proffer, nor is this Court aware of, any additional treatment notes indicating that plaintiff regularly experienced "black out" or "pass out" symptoms. Instead, the medical record, consistent with the ALJ's finding, reflects milder symptoms. *Compare* tr. 28 ("[A]lthough the claimant has depression and anxiety, the claimant's symptoms are not so severe that she would be precluded from returning to work at the [RFC] outline above."), *with* tr. 244 (On November 4, 2010, plaintiff denied symptoms of panic and social anxiety.), tr. 298 (On March 16, 2012, plaintiff reported that her anxiety symptoms had lessened with age and were not a primary problem.), *and* tr. 499 (On April 11, 2012, Dr. McKenna discerned only "mild symptoms of anxiety" during the course of a seventy-five minute clinical evaluation.).

Plaintiff also provides citations to substantiate her daytime sleepiness symptoms. *See* Pl.'s Br. 18, ECF No. 18. (citing tr. 233, 387). For example, between April and September 2002, plaintiff met with Dr. Ironside at least five times to treat her "excessive daytime sleepiness." *See* tr. 387–97. On May 8, 2002, plaintiff underwent a sleep study. Tr. 395–97. Based upon that

6 – OPINION AND ORDER

study, Dr. Ironside noted that he was "suspicious" that plaintiff may have narcolepsy/cataplexy syndrome. Tr. 396; *see also* tr. 388. On May 22, 2002, plaintiff met with Dr. Ironside to discuss treatment and was prescribed Provigil. Tr. 390–91. On June 5, 2002, plaintiff reported improvement on Provigil, but indicated that she was not as awake and alert as she desired. Tr. 392. On September 24, 2002, plaintiff followed up with Dr. Ironside to discuss her sleepiness. Tr. 393–94. Dr. Ironside noted that plaintiff's "probable" narcolepsy was "improved" and that she needed to be quantitated with a Multiple Sleep Latency test because her "complaints [were] out of context with her" earlier sleep study. *Id*. There is no indication in the medical record that plaintiff returned for follow up treatment.

Plaintiff continued to take Provigil, in addition to Effexor,[5] regularly up until at least the date of her administrative hearing. *E.g.,* tr. 50, 411. Plaintiff frequently reported improvement while on both medications.[6] On those few occasions in which plaintiff reported more extreme fatigue, she was advised to restart Provigil. *See* tr. 390–91 (treatment note dated May 22, 2002); tr. 433 (treatment note dated March 18, 2005); tr. 411 (treatment note dated November 3, 2010). This medical record, consistent with the ALJ's findings, reflects milder sleepiness symptoms that regularly improved with treatment.

Second, as to inconsistency with plaintiff's daily activities, the ALJ found:

---

[5] Effexor (venlafaxine) is an antidepressant that is used to treat clinical depression and anxiety disorders. *See* National Center for Biotechnology Information, *PubChem: venlafaxine*, *available at* http://pubchem.ncbi.nlm.nih.gov/compound/venlafaxine#section=Top.

[6] *See* tr. 442 (On July 15, 2002, plaintiff reported that Provigil helped "her fatigue a bit."); tr. 438 (On February 28, 2003, plaintiff noted that she was doing well, but had done better on a higher prescription of Effexor.); tr. 435 (On December 19, 2003, plaintiff indicated she was frustrated that Dr. Ironside did not renew her Provigil because she had been "doing quite well" on her existing Provigil prescription.); tr. 433 (On March 18, 2005, plaintiff reported that she had failed to refill her Provigil prescription "for some time," but wanted to restart it because she thought it would improve her worsening symptoms.); tr. 426 (On March 14, 2007, plaintiff indicated that "the Effexor really helps her panic disorder."); tr. 420 (On February 14, 2008, plaintiff reported that although she had Provigil, she was not taking it because she felt that she didn't need it."); tr. 418 (On June 25, 2008, plaintiff indicated that she was "doing okay" and could "get by" on the Effexor.); tr. 411 (On November 3, 2010, plaintiff reported "significant daytime drowsiness" and was instructed to restart Provigil.).

7 – OPINION AND ORDER

> The claimant also testified that she is unable to work because she can't cope with going outside of the house, gets confused, can't make decisions, and gets lost when she drives (Hearing Testimony 2:12:18 PM). However, the claimant is able to care for her young son without significant difficulty. Moreover, as noted above, the claimant's activities of daily living are wide. The claimant reported that she is able to prepare simple meals every day for herself and her son, take care of her personal grooming although she does not shower often, do light housework including laundry and dishes, and shop for groceries in stores (Exh. 5E p.4, 3F p.3). The claimant's activities of daily living also support the conclusion that the claimant is able to return to work at the residual functional capacity outlined above.

Tr. 30. An ALJ can rely on daily activities to form the basis of an adverse credibility determination if those activities contradict a plaintiff's testimony or involve the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Defendant contends that plaintiff's activities contradict her testimony. Def.'s Br. 9, ECF No. 19. This Court briefly looks to the record.

During the administrative hearing, plaintiff testified that she doesn't go out of the house very often "because [she] can't cope with it." Tr. 48. Plaintiff described her inability to "cope" as: "I get really confused and I can't make a decision and I can't think straight . . . . I can't drive anywhere further because I get lost." *Id.* Plaintiff also indicated that during the day, "all day long," she "just stay[s] in the house . . . . sit[s] and pick[s] [her] skin." Tr. 56. This testimony, at least to the extent that it suggests limitations greater than plaintiff's RFC, is contradicted in the record.

Plaintiff's ability to cope outside her home is greater than alleged. Plaintiff drives to the grocery store one to two times each week; each time shopping for two to three hour intervals, tr. 174, 177; she drives to RiteAid to pick up her prescriptions, tr. 47; she drives her son to the bus

stop and on occasion, his elementary school, tr. 46–47, and she attended a parent teacher conference for her son, tr. 58.

Plaintiff activities within her home are also greater than alleged. Plaintiff cares for her young son, tr. 46–47, 175; she prepares meals for herself and her son on a daily basis, tr. 46, 176; she performs light house work, e.g., dishes and laundry, tr. 177; she watches television, tr. 178; she cares for her family's pet, tr. 175; and she is able to contact multiple medical providers to confirm medical insurance coverage, tr. 500.

The ALJ, having considered this evidentiary record, reasonably found that many of plaintiff's statements were inconsistent and contradicted; thereby undermining her credibility. *Cf.* tr. 231 (Dr. Ethel-King reported that "the client's reported symptomology does not appear to be consistent with her clinical presentation and her reported functional capacity."). Accordingly, the ALJ's reliance on the medical evidence and plaintiff's contradictory statements is sufficient to reject plaintiff's testimony regarding the severity of her symptoms.

### III. Dr. McKenna's Opinion

Plaintiff contends that the ALJ erred in his consideration of Dr. McKenna's opinion. *See* Pl.'s Br. 11–17, ECF No. 18. In response, defendant argues that the ALJ provided sufficient reasons for partially rejecting Dr. McKenna's opinion. Def.'s Br. 11–13, ECF No. 19.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "If a treating or examining doctor's opinion is contracted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). When evaluating conflicting medical opinions, an

9 – OPINION AND ORDER

ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.* (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).

Plaintiff met with Molly C. McKenna, Ph.D. on April 11, 2012 for a seventy-five minute comprehensive neuropsychological administrative examination.[7] *See* tr. 489–501. Dr. McKenna determined that the results of this examination were invalid because they strongly suggested suboptimal or variable effort. Tr. 499. Nonetheless, in reliance on plaintiff's "self-report, her behavior on interview, and available records," tr. 506–507, Dr. McKenna diagnosed plaintiff with major depressive disorder and anxiety disorder not otherwise specified. Tr. 498. As a result of these diagnoses, Dr. McKenna opined:

> 12.04 – Affective Disorders – I do believe Ms. Larson has met criteria for a depressive disorder since 3/15/10, based on depressed mood, passive suicidal ideation, hypersomnia, decreased energy, crying spells, and hopelessness
>
> . . .
>
> 12.06 – Anxiety-related Disorders – I believe Ms. Larson's profile does support an anxiety-related diagnosis, based on reported panic attacks, avoidance of community activities, compulsive behaviors, and poor concentration due to worry.
>
> 12.08 – Personality Disorders – Ms. Larson definitely meets the listing criteria in this area, based on maladaptive patterns of behavior including oddities of thought and perceptual experiences, potentially including bodily illusions. These result in clearly marked difficulties in social interaction.

---

[7] Pursuant to this evaluation, Dr. McKenna administered multiple psychological tests, including: Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV); Wechsler Memory Scale-Fourth Edition (WMS-IV); Word Memory Test; California Verbal Learning Test-Second Edition (CVLT-II); Trails A and B; Wide Range Achievement Test-Fourth Edition (WRAT-4), Reading subtest; Beck Anxiety Inventory (BAI); and Minnesota Multiphase Personality Inventory-Second Edition-Restructured Form (MMPI-2-RF). Tr. 489.

10 – OPINION AND ORDER

Tr. 500. Dr. McKenna also completed a Mental Residual Function Capacity Report. Tr. 502 – 505. In that report, Dr. McKenna opined that plaintiff had marked limitations in at least four different areas and moderate limitations in at least six different areas.[8] *See* tr. 502–504.

The ALJ, having reviewed Dr. McKenna's treatment notes and objective findings, assigned "very little weight" to Dr. McKenna's opinion. Tr. 29. The ALJ explained:

> I give this opinion very little weight because Dr. McKenna bases this opinion on invalid test results, unreliable self-reports, and exaggerated presentation . . . . [and] because Dr. McKenna herself stated that the claimant's self-report appeared inaccurate, and her presentation was puzzling due to discrepancies between the claimant's stated symptoms and presentation, and her previous work and family experience (Exh, 11F p. 11-16).

Tr. 29–30.

Plaintiff contends that the ALJ's proffered reasons for rejection are legally insufficient and as a result, Dr. McKenna's opinion should be credited as a matter of law. *See* Pl.'s Br. 17, ECF No. 18. This Court looks to the record.

Agency consultant, Sandra L. Lundblad, Psy.D. considered treatment notes from PMG/Sunset, an intellectual evaluation[9] conducted by Patrick Ethel-King, Ph.D., and plaintiff's work history, and opined on August 27, 2010 that plaintiff's medically determinable impairment(s) did not satisfy the Listing(s) criterion identified in paragraphs "b" and "c." Tr. 66–67; *see also* 20 C.F.R. Pt. 404, Sub. Pt. P, App. 1 (the "Listing(s)"). Dr. Lundblad further noted that plaintiff was distractible during her evaluation with Dr. Ethel-King, but reported symptoms

---

[8] Dr. McKenna's assessment of plaintiff's ability to carry out detailed instructions and maintain attention and concentration for extended periods of time was consistent with Dr. Lundblad's assessment of those same functional areas. *Compare* tr. 503, *with* tr. 68.

[9] Dr. Ethel-King administered plaintiff the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III) and a mental status examination on August 11, 2010. *See* tr. 227–231. Based upon these assessment results, Dr. Ethel-King diagnosed plaintiff with Attention Deficit/Hyperactivity Disorder NOS. Tr. 231. Dr. Ethel-King also concluded that because of plaintiff's attentional problems, her performance "was not considered to be a valid representation of her current level of intellectual functioning." Tr. 229.

inconsistent with her presentation and functional capacity. Tr. 67. As a result, Dr. Lundblad concluded that plaintiff had moderate limitations in carrying out detailed instructions and maintaining attention and concentration for extended periods of time, but was not otherwise significantly limited. Tr. 68–69. Agency consultant, Joshua J. Boyd, Psy.D. affirmed Dr. Lundblad's opinion on November 24, 2010. Tr. 76–78.

The ALJ assigned "significant weight" to the opinions of Drs. Lundblad and Boyd, and formed an RFC consistent with both. Tr. 30. Because the opinions of Drs. Lundblad and Boyd contradict Dr. McKenna's opinion, Dr. McKenna's opinion may only be rejected if the ALJ gave "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Andrews*, 53 F.3d at 1041; *see also Bayliss*, 427 F.3d at 1016. The opinions of Drs. Alley and Jensen "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews*, 53 F.3d at 1041.

The ALJ proffered multiple reasons to partially reject Dr. McKenna's opinion. First, the ALJ characterized plaintiff's self-reports as "unreliable." Tr. 29. This finding is supported by substantial evidence. As discussed *supra* § II, the ALJ properly rejected plaintiff's testimony regarding the severity of her symptoms. Moreover, Dr. McKenna acknowledged that plaintiff's self-reporting was inaccurate:

> She reports severe anxiety with recurrent panic attacks, but also reports hypersomnia and extreme fatigue; *only mild symptoms of anxiety were discerned on evaluation*. Ms. Larson's history does suggest possible intellectual deficits, based on her low grades, reported difficulty understanding in school, and reported poor performance on the job. Despite this, *she passed the GED exam with little preparation and held a clerical/administrative job for over a year* . . . . She complained of very serious anxiety symptoms including regular panic attacks, but on 3/16/12 at Lifeworks NW *she denied that anxiety was a primary problem*. It is not clear if her self-report might be *inaccurate* due to misunderstandings, exaggeration or fabrication.

12 – OPINION AND ORDER

Tr. 499 (emphasis added).

Second, the ALJ also characterized plaintiff's presentation as "exaggerated." Tr. 29. This finding is also supported in the record. Dr. McKenna noted that inconsistencies within plaintiff's presentation were "puzzling." Tr. 499. Dr. McKenna further explained:

> She seems to be very socially impaired, in a way that strongly suggests an autism spectrum disorder; however, she was previously married and was able to sustain a job that required some social ability for at least 18 months . . . . She also may be *exaggerating her symptoms*, reporting unusually high frequency and severity of symptoms, well in excess of the profile of individuals with more severe disorders or more impaired independent function than she reports. *As such, it is difficult to clearly determine what of her self-report or test performance is an accurate reflection of her true ability or experience*. At this time, the impediments to returning this evaluee to gainful employment are difficult to determine, given her invalid test performance and the complex set of symptoms of which she complains.

Tr. 499–500.

These reasons, particularly because Dr. McKenna relied "primarily" on "observed behavior and reported psychological symptoms" to identify employment barriers, tr. 507, are sufficient to partially reject those same opined employment barriers to the extent that they are inconsistent with the RFC, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a . . . physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." (citation and internal quotation marks omitted)).

## **IV. RFC Limitations**

13 – OPINION AND ORDER

Plaintiff argues that her RFC limitation to "simple and repetitive tasks," tr. 27,[10] does not incorporate her limitations in: maintaining hygiene; maintaining an acceptable level of attendance and tardiness; concentration, persistence or pace; adjustment to routine changes in the workplace; appropriate communication with co-workers and supervisors; and distraction of others with her mental health symptoms, Pl.'s Br. 19–20, ECF No. 18. This Court is not persuaded.

The ALJ, on the basis of plaintiff's recognized depression and anxiety, concluded that plaintiff had mild difficulties in social functioning and moderate difficulties with regard to concentration, persistence or pace. Tr. 27. As indicated in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008), these recognized limitations are captured by plaintiff's limitation to "simple and repetitive tasks."

In *Stubbs-Danielson*, the Ninth Circuit joined the Sixth and Eighth Circuits in recognizing that an "ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony." 539 F.3d at 1174. The Court held that an ALJ's limiting instruction of "simple tasks" adequately incorporated an examining doctor's observations that plaintiff had a "slow pace, both with thinking and her actions" and was "moderately limited" in her ability to "perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 1173; *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (holding that the ALJ's limiting instruction of "simple, routine, repetitive work" adequately accounted for "the finding of

---

[10] The ALJ concluded that plaintiff had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to work that requires only simple and repetitive tasks." Tr. 27.

borderline intellectual functioning."). As in *Stubb-Danielson*, plaintiff's RFC limitations were consistent with the accepted medical testimony.[11]

As to plaintiff's other proffered limitations, the ALJ properly rejected these limitations when he considered plaintiff's testimony, *supra* § II, and the opinion of Dr. McKenna, *supra* § III; *see also Batson*, 359 F.3d at 1197 ("The ALJ was not required to incorporate evidence from the opinions of [plaintiff's] . . . physicians, which were permissibly discounted." (citations omitted)).

Accordingly, the ALJ had substantial evidence to conclude that plaintiff was capable of performing "simple and repetitive tasks."

## IV. Step Five

At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work that exists in "significant numbers" in the national economy after considering the claimant's RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). There are two ways for the Commissioner to meet this burden: (a) vocational expert (VE) testimony, *or* (b) reference to the grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100–101 (9th Cir. 1999). In this matter, the ALJ declined to elicit VE testimony and relied exclusively on the grids. *See* tr. 31.

---

[11] *See, e.g.*, tr. 435 (On December 19, 2003, Dr. Olson indicated that plaintiff's affect was appropriate and her judgment was good.); tr. 423 (On November 28, 2008, Dr. Tsai concluded that plaintiff's affect was normal and her mental status was grossly normal); tr. 414 (On November 19, 2009, Dr. Khary concluded that plaintiff's mental status was normal.); tr. 231 (On August 10 and 11, 2010, Dr. Ethel-King administered plaintiff an intellectual evaluation and noted "that the client's reported symptomology does not appear to be consistent with her clinical presentation and her reported functional capacity."); tr. 69 (On August 27, 2010, Dr. Lundblad indicated that plaintiff was able to sustain concentration, persistence or pace for simple and routine tasks.); tr. 78 (On November 24, 2010, Dr. Boyd affirmed Dr. Lundblad's mental RFC findings.); tr. 500 (On April 11, 2012, Dr. McKenna administered plaintiff a neuropsychological examination and noted that plaintiff "may be exaggerating her symptoms, reporting unusually high frequency and severity of symptoms, well in excess of the profile of individuals with more severe disorders or more impaired independent function than she reports.").

15 – OPINION AND ORDER

An ALJ may use the grids without VE testimony if a claimant's non-exertional limitations are not "sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Hoopaie v. Astrue,* 499 F.3d 1071, 1075 (9th Cir. 2007) (citation and internal quotation marks omitted). Plaintiff's recognized severe depression and anxiety at step two are "not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a [VE]." *Id.* at 1076. Instead, an ALJ is required to seek VE testimony only if non-exertional limitations make the grids inapplicable to the particular case.

In this case, substantial evidence supports the ALJ's determination that plaintiff's depression and anxiety were not sufficiently severe so as to significantly limit the range of work permitted. Plaintiff's limitation to "simple and repetitive tasks" also limits her to "unskilled work." *See* 20 C.F.R. § 416.968(a) (defining "unskilled work"). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985). A substantial loss of ability to meet any of these basic work-related activities would severely limit the range of work permitted. *Id.* The record does not suggest that plaintiff has experienced such a loss.

Drs. Lundblad and Boyd both concluded that plaintiff's limitations did not significantly impact her ability to understand, carry out, and remember simple instructions, tr. 68, 79; respond appropriately to supervision, coworkers, and usual work situations, tr. 69, 79–80; or to deal with changes in a routine work setting, tr. 69, 80. Dr. McKenna also concluded that plaintiff's limitations did not significantly impact her ability understand, carry out, and remember simple

16 – OPINION AND ORDER

instructions, tr. 502–503. These medical opinions, particularly when considered in light of plaintiff's treatment history, *see supra* §§ II, IV, constitute substantial evidence supporting the ALJ's conclusion that plaintiff's depression and anxiety were not sufficiently severe non-exertional limitations as to prohibit reliance on the grids without the assistance of a VE.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 16th day of January, 2015.

_____s/Michael J. McShane_____
**Michael J. McShane
United States District Judge**